## PEEL VS. JANUARY et al.

1. JURISDICTION: *Obtained by fraud.*

J, a citizen of St. Louis, sued P, a citizen of Washington county, Ark., in the circuit court of that county, and in order to get jurisdiction of his person and sue him in St. Louis, had him served in Arkansas with notice to take deposition in St. Louis for evidence in the pending suit in Arkansas, and thereby induced him to St. Louis and instituted suit, and got personal service of summons on him there. P made no appearance to that suit, and J recovered judgment against him by default, and then sued him on that judgment in Arkansas. To this suit P pleaded the foregoing facts in defense at law. *Held,* upon demurrer: That the inducing P to St. Louis in the manner and for the purpose stated, and serving him with process there, were a fraud upon the jurisdiction of the court there, for which, upon a proper application in apt time, the court there would have quashed the service or set aside the judgment; or for which a court of equity, either in Missouri or Arkansas, would have enjoined the judgment if he had, without fault or negligence on his part, been deprived of applying to the court which rendered the judgment, to set it aside; but that the fraud was no defense *at law* to an action on the judgment.

2. LAWS OF OTHER STATES: *Not proved, presumed to be common law.*

In the absence of evidence to the contrary, the common law is presumed to be in force in another state.

3. JUDGMENTS: *Foreign, when conclusive.*

In a suit brought in a court of one state upon a judgment of a court of another state, which had jurisdiction of the subject-matter and of the person of the defendant, the judgment is conclusive as to all other matters.

4. FRAUD: *Pleadable under the Code, against judgment.*

Fraud or imposition in the recovery of a judgment may, under the Civil Code, be set up as an equitable defense to defeat a recovery upon it; but the answer must show sufficient reasons for not applying to the court that rendered it, to set it aside; and must be framed like a bill for relief, and the cause transferred to the equity docket.

5. APPEARANCE: *Motion to quash fraudulent service is not.*

Neither by the common law nor by our practice would an application to a court to set aside a service unfairly obtained be regarded as an appearance to the suit.

APPEAL from *Washington* Circuit Court.

Hon. R. W. ELLIS, Special Judge of the Circuit Court.

*J. D. Walker*, for appellant.

*Gregg, contra.*

ENGLISH, C. J.   This action was brought in the circuit court of Washington county by Dederick A. January and Jesse L. January, successors to the mercantile firm of D. A. January & Co., of St. Louis, against Samuel W. Peel, upon a judgment recovered by plaintiffs against defendant in the circuit court of St. Louis, Mo.

The transcript of the judgment, etc., which is the foundation of the action, exhibited with and made part of the complaint, shows that on the twenty-second of January, 1878, the plaintiffs commenced suit in the circuit court of St. Louis against defendant on an open account for goods, wares, and merchandise, etc.; that the writ issued, on the filing of complaint and bill of particulars, was made returnable on the first Monday of April, 1878, and that on the day of its issuance (the twenty-second of January, 1878,) it was served on the defendant personally, by the sheriff, in the city of St. Louis.   At the return term defendant made default, and judgment was rendered against him for $329.38 —amount of the account sued on—and for costs.

To the present action on the Missouri judgment, the defendant filed an answer, in substance, as follows:

That at the time of the commencement of the suit in the circuit court of St. Louis, and at the time of the rendering of the judgment therein, defendant was a citizen and resident of this state, and not a citizen or resident, or domiciled in the state of Missouri; nor had he any property therein liable to seizure on execution, attachment or other

process; that he did not appear to said action in person or by attorney, and was not served with process, and had no notice of the pendency of the suit, other than the service on the twenty-second of January, 1878, of a summons issued out of the office of the clerk of the circuit court of St. Louis on that day.

That before the commencement of the suit in St. Louis, plaintiffs had sued defendant on the same cause of action in the circuit court of Washington county, in this state, which was pending when the St. Louis suit was commenced, and when the judgment was rendered therein.

That defendant was not indebted to plaintiffs in the whole amount sued for and recovered by the St. Louis judgment, and that $120 of said account, for which the judgment was rendered, was incorrect and unjust.

That while said action was pending in the circuit court of Washington county, and defendant was resisting the same, and preparing his defense thereto, plaintiffs notified him that they would take the depositions of witnesses in the city of St. Louis on the twenty-second day of January, 1878, to be read as evidence on their part on the trial of said cause, and to then and there appear and cross-examine such witnesses.

Induced by this notice, defendant left his residence in Arkansas, and started to St. Louis on the nineteenth; reached there on the twenty-first, and was present in said city on the twenty-second of January, 1878, for the purpose of personally cross-examining such witnesses as plaintiffs might produce against him under said notice.

That after he was thus induced to go within the jurisdiction of the circuit court of St. Louis, plaintiffs, on the twenty-second of January, 1878, instituted their action against him in said court, upon the same demand on which

the judgment sued on in this action was recovered, and upon which their suit in the circuit court of Washington county, in this state, was then pending, and caused him to be served with process, etc.

And so defendant says that plaintiffs, fraudulently intending to obtain jurisdiction of his person before, and to prosecute the action aforesaid, on which said supposed judgment was obtained, in the said circuit court of the city of St. Louis, fraudulently caused by the giving of the notice to take the depositions aforesaid, the personal presence of defendant within the jurisdiction of the said circuit court, on the twenty-second day of January, 1878, and at the time of the service of the said process in said suit upon him; and that thereby the jurisdiction of the person of this defendant, by the service of said process, issued and served on said twenty-second of January, 1878, in said action in which said supposed judgment was rendered in said circuit court of the city of St. Louis, by the acts and doings of said plaintiffs, as aforesaid, was fraudulently obtained, and that such judgment should be held null and void; wherefore defendant prays judgment.

The plaintiffs demurred to the answer on the following grounds:

"1.    Because the answer attempts to set up fraud in procuring jurisdiction of defendant's person, and the facts by him stated show that he went voluntarily within the jurisdiction of said circuit court of St. Louis.

" 2.    Because said answer does not deny that said plaintiffs have a just and legal cause of action against said defendant.

" 3.    Because said answer admits the validity and justness of more than half of plaintiffs' claim, and attempts to

defeat the whole action by alleging that only $120 of their claim is unjust.

"4    Because said answer is otherwise insufficient in law."

The court sustained the demurrer, and defendant resting, judgment was rendered against him in favor of plaintiffs for the amount of the judgment sued on, and defendant appealed.

I.    Taking the allegations of the answer to be true, as admitted by the demurrer, the personal presence of appellant within the jurisdiction of the circuit court of St. Louis, and the service of process on him there, were obtained by a fraudulent contrivance of appellees.

1. JURISDICTION: Obtained by fraud.

True, he went there voluntarily, but if induced to go there by a false notice—a notice intended to bring him there for the purpose of serving him with process, and not designed in good faith to afford him an opportunity to cross-examine witnesses, it was a fraud upon the jurisdiction of the St. Louis circuit court.

In *Carpenter v. Spooner, 2 Sandford, 717*, defendant went voluntarily into the city of New York, where he was induced to go by means of a false letter which plaintiff caused to be written to him, for the purpose of inducing him to go there, that he might procure service of a writ upon him.

An application was made to set aside the service, and the court said: " This court will not sanction any attempt to bring a party within its jurisdiction by fraud and misrepresentation.   And where, by a false statement or fraudulent pretense, a party is brought within the jurisdiction and there served with process, the service will be set aside. We recollect a case where a party was entrapped into the state out of another state, and then served with process, and there the service was set aside."

In *Goupil v. Simonson, 3 Abb. Prac. R., 474,* the sheriff induced Simonson to come within his bailiwick by a false statement that his son was imprisoned there, and then served an order of arrest upon him, and he was, on motion, discharged. The court said: " It is but too apparent that he was enticed within the bailiwick of the sheriff of Kings county that he might be arrested. It is manifest that the whole proceeding was a trick for the purpose of giving the sheriff of Kings county an opportunity to arrest the defendant"—and the court approved the ruling in *Carpenter v. Spooner, sup.*

In *Luttin v. Benin, 11 Mod., 50,* Lord HOLT, after stating that if a man is wrongfully brought into a jurisdiction and thereby lawfully arrested, he ought to be discharged, adds, "for no lawful thing founded upon a wrongful act, can be supported."

And Chief Justice SHAW, in *Ilsley v. Nichols, 12 Pick., 276,* said: " These cases [reviewed by him] seem to establish the general principle, that a valid and lawful act can not be accomplished by any unlawful means; and whenever such unlawful means are resorted to, the law will interpose and afford some suitable remedy, according to the means of the case, to restore the party injured by these unlawful means to his rights."

In that case, it was held that where an officer unlawfully broke open the outer-door of a dwelling, he could not make a lawful attachment of goods therein.

No doubt, upon the showing made by appellant's answer, the circuit court of St. Louis would have set aside the service of the summons made upon him, had he made application for that purpose before judgment.

2. LAWS OF OTHER STATES: Common law.    Nor, by the common law, which we presume to be in force in the state of Missouri, in the absence of evidence

to the contrary, would the making of such a motion have been an appearance to the action. *Ferguson v. Ross, 5 Ark., 517.*

II. The purpose of the answer was to defeat the whole action upon the judgment on the ground that it was recovered on service of the writ procured by fraud of the appellees.

This suit is upon a judgment of a court of record of the state of Missouri, rendered upon a cause of action within its jurisdiction, and upon actual personal service of the writ on appellant; and the suit was brought upon the law side of the circuit court of Washington county, in this state.

*Sec. 1, Art. IV, of the Constitution of the United States* provides that, "full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state. And the congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

The act of congress of May 20, 1790, provides the manner of authenticating the records and judicial proceedings of the states, and declares that "the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given them, in every court within the United States as they have, by law or usage, in the courts of the state from whence the said records are and shall be taken." *Gantt's Dig., p. 136.*

Where a suit is brought in a court of one state upon a judgment recovered in a court of another, and jurisdiction of the subject-matter and of the person is made to appear, the judgment is conclusive as to other matters. *Thompson v. Whitman, 18 Wallace, 457; Barkman v. Hopkins et al., 11*

3. JUDG-
MENTS OF
OTHER
STATES.
When conclusive.

22

*Ark., 157; Buford v. Kirkpatrick, 13 ib., 33; Kimball et al. v. Merrick, 20 ib., 12.*

If, to a suit upon the judgment in Missouri, where it was rendered, appellant could avail himself of the defense that it was recovered by fraud, the same defense is allowable to a suit on the judgment in a court of this state.

As above remarked, in the absence of evidence to the contrary, the common law is presumed to be in force in Missouri.

Domestic judgments, under the rules of the common law, could not be collaterally impeached or called in question if rendered in a court of competent jurisdiction.

It could only be done directly by writ of error, petition for new trial, or by bill in chancery. Third persons only, says Saunders, could set up the defense of fraud or collusion, and not the parties to the record, whose only relief was in equity, etc. Common law rules placed foreign judgments upon a different footing, etc.

Subject to the qualification that they are open to inquiry as to the jurisdiction of the court which gave them, and as to notice to the defendant, the judgment of a state court, not reversed by a superior court having jurisdiction, nor set aside by a direct proceeding in chancery, is conclusive in the courts of all the other states where the subject-matter of the controversy is the same. To a suit in a court of one state upon a judgment of a court of another state, a plea that the judgment was obtained by fraud, is not allowed. The only remedy is by bill in chancery.

*Fraud in obtaining, not pleadable at law.*

Such is the decision of the supreme court of the United States (whose peculiar and superior province it is to construe the constitution and laws of the United States) in *Chrismas v. Russell, 5 Wallace, 290.*

This ruling is also sustained by decisions of the state

courts. *Benton v. Burgot, 10 Sergeant & Rawle, 240; Granger v. Clark, 22 Maine, 128; Anderson v. Anderson, 8 Ohio, 188; McRae v. Mattoon, 13 Pick, 53; Sanford v. Sanford, 28 Conn., 6.*

*Pearce v. Olney, 20 Conn., 544,* illustrates the rule and the practice under the common law. A judgment was obtained in New York, and an action was brought upon it in Connecticut; defendant filed a bill in chancery to enjoin the prosecution of the action on the ground that the judgment had been obtained by fraud—that he owed the plaintiff in the judgment nothing, and though served with process in New York, he was prevented from making defense to the suit by the fraudulent conduct of the plaintiff. Upon the facts of the case, the plaintiff was enjoined from further prosecuting his action of debt on the judgment recovered in New York.

Justice HINMAN, who delivered the opinion of the supreme court of Conneticut, in the case, said: " The object of injunctions to stay proceedings at law, is, to prevent injustice by an unfair use of the process of the court. They are granted on the ground of the existence of facts, not amounting to a defense to the proceeding enjoined against, but of which courts of equity have jurisdiction, and which renders it against conscience that the party enjoined should be permitted to proceed in the cause. It is well settled that this jurisdiction will be exercised, whenever a party, having a good defense to an action at law, has had no opportunity to make it, or has been prevented by the fraud or improper management of the other party, from making it, and by reason thereof a judgment has been obtained which it is against conscience to enforce. Indeed, this falls directly within, and is but an illustration of, the general rule that equity will interfere to restrain the use of an ad-

vantage gained in a court of ordinary jurisdiction, which must necessarily make that court an instrument of injustice, in all cases where such advantage has been gained by the fraud, accident, or mistake, of the opposite party."

Further on, in the opinion, after stating that complainant in the bill had been sued in New York on a contract with which, personally, he had nothing to do, and upon which he was not personally liable, and judgment had been obtained against him, on service of process, and without defense, Justice HINMAN further said : "If this was all, complainant would have no remedy, however unjust it might be to compel him to pay that judgment. Still, as he was duly served with process in that suit, it was his duty to make defense in it; and an injunction ought not to be granted to relieve him from the consequences of his own neglect. It is found, however, that he not only had a good defense, but it was his intention to make it, and he would have made it, had he not been led, by the conduct of the attorney for the plaintiff in that suit, to suppose the suit was abandoned," etc.

*Rogers v. Gwinn, 21 Iowa, 58,* was a similar case.

Rogers sued Gwinn, who was a resident of Iowa, in an action for slander, in Kentucky; obtained personal service of process, and Gwinn entered the plea of not guilty. It was positively agreed between him and plaintiff, Rogers, that plaintiff had no cause of action, and that the action should be dismissed, and, on this assurance, Gwinn returned to Iowa. Afterwards, in his absence, and without notice, Rogers proceeded *ex parte* with the suit, and obtained a judgment against him for $700 in damages, and thereafter brought an action against him on the judgment in Iowa. He filed an equitable answer, setting up the above facts to show that the judgment was obtained against

him by fraud; the cause was tried by the court, and finding and judgment in his favor, and Rogers appealed.

Justice DILLON, who delivered the opinion of the supreme court, said:

"Our statute allows equitable defenses to be pleaded to an action at law. (*Rev.*, *secs.* 2617, 2880). Under the answer filed in this case, the defendant is entitled to the same relief which the same facts would, under the former practice, have authorized, if he had made them the ground of a bill in chancery, directly assailing the judgment. The circuitous practice of a bill in chancery to enjoin the law action and for relief, is, under the revision, no longer necessary, if, indeed, it be any longer, strictly speaking, proper."

In *Dobson v. Pearce*, *12 New York* (*2 Kernan*), *56*, cited by Justice DILLON to support the views of the supreme court of Iowa, the suit was upon a judgment, and the answer was, that it was obtained by fraud. The court of appeals of New York, by Justice ALLAN, said: "It is unquestionable that a court of chancery has power to grant relief against judgments when obtained by fraud. Any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not avail himself at law, but was prevented by fraud, or accident, unmixed with any fault or negligence in himself or his agents, will justify an interference by a court of equity."

Under our present judiciary system, the functions of the courts of common law and chancery are united in the same court, and the distinction between actions at law and suits in equity, and the forms of all such actions and suits, are abolished, and the defendant may set forth, by answer, as many defenses as he may have, whether they be such as

have heretofore been denominated legal or equitable, or both. (*Secs. 69, 150*). The Code also authorizes affirmative relief to be given to defendant in an action by the judgment. *Sec. 274.*

The intent of the legislature is very clear, that all controversies respecting the subject-matter of the litigation should be determined in one action, and the provisions are adapted to give effect to that intent.

4. FRAUD: Pleadable under the Code, against a judgment. Whether, therefore, fraud or imposition in the recovery of a judgment, could heretofore have been alleged against it collaterally at law, or not, it may now be set up as an equitable defense to defeat a recovery upon it.

Under the head of equitable defenses are included all matters which would before have authorized an application to the court of chancery for relief against a legal liability but which, at law, could not have been pleaded in bar. The fact alleged by way of defense in this action, would have been good cause for relief against the judgment in a court of chancery, and under our present system are, therefore, proper matters of defense; and there was no necessity or propriety for a resort to a separate action to vacate the judgment. In Connecticut, although law and equity are administered by the same judges, still the distinction between these systems is preserved, and justice is administered under the head of common law, and chancery jurisdiction by distinct and appropriate forms of foreclosure, and hence, as it was at least doubtful whether at law, the fraud alleged would bar a recovery upon the judgment, a resort to the chancery powers of the court of that state was proper, if not necessary.

As in Connecticut, under our present constitution (*Art. VII, secs. 11, 15*) the circuit courts are vested with both common law and chancery jurisdiction, until the general

assembly shall deem it expedient to establish separate courts of chancery.

If a party has a legal cause of action, he brings his suit on the law side of the court, and if an equitable cause of action, it is brought on the chancery side.

Under the Civil Code, if a defendant to an action at law has a defense cognizable only in equity, he is not obliged as under the former practice, to suffer judgment at law, and file a bill for injunction, but he may make his answer serve the purpose of a bill, and have the cause transferred from the law to the equity side of the court. *Gantt's Dig., sec. 4465.*

Here the action was at law, not upon an open demand, but upon a judgment recovered in another state, which appellees sought to enforce in this state. The answer was in the form of a plea in bar, with a prayer for judgment.

It should have been framed like a bill in equity for an injunction against the enforcement of the judgment, stating the facts, and praying relief. As a plea in bar, appellants had no right to reply. If it had been properly framed as a bill for relief, the case should have been transferred to the chancery side of the court, and appellants allowed to reply to its allegations, or demur. This is the proper Code practice under our judicial system.

But passing over the form of the answer, it failed to allege that appellant made any application to the court in St. Louis to set aside the service of the writ complained of, and gives no excuse for not doing so, not even that it was inconvenient for him to have made the application.

The service was not void, but voidable, and if acquiesced in by appellant, valid.

*Dunlap & Co. v. Cody, 33 Iowa, 260*, relied on by counsel

Peel vs. January et al.

for appellant, differs in some of its features from this case.

Dunlap & Co., of Illinois, held a note on Cody, of Iowa, which was barred by the statute of limitations of the latter state. To avoid the bar, they induced him, by a falsehood, to go into Illinois, a thousand miles from his home, where, having prepared a suit upon the note, they caused the sheriff to serve process upon him immediately on his arrival in the cars. They afterwards obtained judgment against him without defense, and thereafter sued him in Iowa upon the judgment. By equitable answer (as in *Rogers v. Gwinn, sup.,*) he pleaded that the judgment was obtained by fraud.

The learned Judge who delivered the opinion of the court, cites a number of adjudications to show that a service of process so obtained is not to be countenanced by the courts, but in cases cited it appears that the service was set aside by the courts out of which the process issued.

Cody was excused for not making application to the Illinois court to set aside the service, on the ground that it was so far from his home, and on the further ground that such an application might have been treated by the Illinois court as an appearance to the action; that it would be so treated in Iowa.

**5. APPEAR-ANCE: Application to vacate fraudulent service is not.** In the absence of evidence, we do not know what the statutes of Missouri are, but neither by the common law nor by our practice, would an application to a court to set aside a service unfairly obtained be treated as an appearance to the action.

In the answer of appellant, he gives no excuse whatever for his failure to apply to the St. Louis court to set aside the service, nor does he claim to have had any defense except to a smaller portion of the debt.

Upon the whole, appellant has neither followed the form-

er chancery nor the Code practice in making his defense, and we can not, upon principle, reverse the judgment for the purpose of allowing him to make a better case.

Affirmed.