No. 38,384

EDNA P. MOYER, *Appellee,* v. CHARLES L. MOYER, *Appellant.*

(233 P. 2d 711)

Opinion filed July 3, 1951.

*Harry Snyder, Jr.,* of Topeka, argued the cause and *A. Harry Crane* and *Ward D. Martin,* both of Topeka, were with him on the briefs for the appellant.

*Edward Curry,* of Topeka, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was a proceeding in habeas corpus to obtain the custody of a twelve-year-old boy. The trial court gave judgment that the petitioner, mother should have custody. The father has appealed.

The petition alleged that Edgar was the son of plaintiff and defendant and defendant took him from his home in California to Kansas, concealed his whereabouts from the petitioner, and petitioner feared defendant would take him out of Kansas or conceal him; that defendant was not a fit and proper person to have the custody of the child. The petition prayed for a writ of habeas

corpus commanding defendant to bring Edgar before the court and to receive what should be determined by the court concerning the child and that petitioner have his custody.

A writ was issued. In obedience to it defendant delivered Edgar. He was placed in the Shawnee County Parental Home to await the outcome of the litigation. Subsequently upon the defendant giving bond to produce him in court he was again placed in his father's custody.

The defendant filed an answer in which he alleged the marriage of himself and petitioner; that they had three children aged seventeen, thirteen and Edgar aged eleven; that petitioner and defendant with all three children had lived together in California until September 1, 1949; that petitioner had acted in an improper manner and about September 1, 1949, had left the family home and taken all three children with her; that defendant had attempted to visit the family and was made to feel unwelcome; that Edgar asked this defendant on numerous occasions to provide a home for him and in May, 1950, defendant took him and left California for the purpose of providing him a home; that they resided in New Mexico for a time and came to live in Topeka about August 1, 1950. The answer further alleged that since that time defendant and Edgar had lived in Topeka in a furnished apartment; that their home was neat, clean and comfortable and they had been living a normal, happy life; that Edgar was enrolled in Sunday School and did not miss a day of school until he was forced to stay in the Shawnee County Parental Home on account of the writ in this action; that he had made good grades in school and attended Sunday School every Sunday; that he had stated to defendant repeatedly that he wished to live with this defendant and did not wish to return to California with his mother; that defendant had steady employment in Topeka and was making $8 a day, together with a pension of $72 a month, as a partially disabled World War I Veteran; that he was able and willing to provide a good home for Edgar.

The answer then alleged "That by reason of the above, this defendant specifically states and alleges that the best interests and welfare of Edgar require that the custody of him be left with this defendant and that he be not returned to California to live with his mother."

The final allegation of the petition was that when defendant left California no court order had been made as to the custody of Edgar to the knowledge of defendant.

The prayer of the answer was that the writ be denied and that he be given Edgar's custody.

The court found:

"(1) that the plaintiff is a fit and proper person to have the care, control and custody of Edgar Earl Moyer, minor child of the parties hereto; (2) that it is to the best interests and welfare of said child that his care, control and custody be placed in the plaintiff herein; (3) that said Edgar Earl Moyer should be discharged from the custody of the defendant herein and should be delivered forthwith by the defendant to the plaintiff, and (4) the court finds the issues herein generally, in favor of the plaintiff and against the defendant."

A motion for a new trial was overruled and final judgment entered awarding custody of Edgar to petitioner, his mother—hence this appeal.

The defendant gave a supersedeas bond in the amount of $500, so the child was placed in his custody pending the final outcome of this appeal.

The errors assigned by defendant are that the trial court erred in rendering judgment for the plaintiff, and in permitting the introduction of evidence over the objection of defendant.

Defendant argues here that the judgment was wrong because since both the father and mother were of equal fitness, the trial court should have recognized the father's common-law right of custody. No opinion of ours where we have recognized such priority of right in the father is cited by defendant and we have found none. We have held many times that as between the parents themselves both have an equal right to custody.

From an early date this court has considered cases where the dispute was between parents over the right to custody of minor children. *In re Bort, Petitioner &c.*, 25 Kan. 308, was a case where a divorce and custody of the two minor children had been granted the father in Wisconsin and while the divorce action was pending the mother had brought the two children of the couple to Kansas and at the time of the hearing was living with them at the home of her father and mother in Kansas. The father brought habeas corpus relying on the assumption that the parents had some property right in children. We proceeded to point out that this court did not follow that doctrine. The court then proceeded to lay down a rule that has been a guide to us ever since. The court said:

"We understand the law to be, when the custody of children is the question, that the best interest of the children is the paramount fact. Rights of father and mother sink into insignificance before that. . . ."

The court then proceeded to examine the record and decided the Kansas mother should retain custody, notwithstanding the Wisconsin divorce decree, and child custody judgment granted the father for the fault of the mother. The court said:

"But the question for our decision is, what do the best interests of the children require?"

In *Wear v. Wear*, 130 Kan. 205, 285 Pac. 606, the mother had obtained a divorce and custody of a child in an action brought in Oklahoma. She had sent the child to Kansas to visit relatives while the divorce action was pending and the child was here when final judgment in Oklahoma was entered awarding her the child's custody. The father had the child in his custody in Kansas and refused to surrender him in compliance with the Oklahoma judgment. The mother sought in this state to secure custody of the child. The trial court gave her judgment. We cited and reviewed many authorities and held the mother was entitled to the custody. We said:

"In a habeas corpus proceeding between parents for the custody of the child the rights of the parents are to be considered, but the interest of the state, in its position as *parens patriae* to all minors within its jurisdiction, is ever present. As between the parents themselves, they may be bound by a former adjudication (See *Avery v. Avery*, 33 Kan. 1, 6, 5 Pac. 418; *In re Hamilton*, 66 Kan. 754, 71 Pac. 817), but the state, on its relation of *parens patriae*, looks to the welfare of the child at the time the inquiry is being made, and for that purpose former adjudications between parents is evidentiary only and not controlling. This is illustrated by the case *In re Bort*, 25 Kan. 308, a habeas corpus proceeding brought by the father for the custody of the children."

The following statement is of value here. We said:

"The trial court correctly held that the contest as presented to the court was one between the father and the mother, and that as between them the matters adjudicated by the Oklahoma court in the divorce case were *res judicata* as to matters determined by the decree in that case, and as of the time it was rendered. The trial court specifically offered to hear evidence as to changed conditions which would authorize or justify a different order with respect to the custody of the child, but, as shown by the entry in the journal, counsel for respondents stated in open court they had no evidence of that character to offer."

It is argued that *Wear v. Wear*, supra, and the cases discussed there, all turned actually on the question whether this court would enforce a child custody order from a court in another state as a matter of absolute right on the suit of either parent. It is argued there was no divorce decree in this action and that the father had as much right to have this child with him as the mother had to have

him with her in California—hence there was no restraint. There was a court order in this case, not a divorce decree to be sure, but nevertheless a court order with reference to the custody of this child.

The matter arose under a rather unique California statute. We shall treat it at this point.

*Deering's Code of Civil Procedure and Probate Code of California* provides among other things a children's court of conciliation. The jurisdiction of the court of conciliation is conferred on the superior court. These correspond to our district courts. These courts have authority, amongst other things, to appoint a director of conciliation. This official has wide jurisdiction to receive applications and complaints, investigate facts, exercise powers of other court commissioners, hold conciliation conferences with parties and make recommendations to the judge of the conciliation court, provide supervision, cause orders of the conciliation court to be entered, and to cause reports to be made. Section 1760 provides as follows:

"Whenever any controversy exists between spouses which may, unless a reconciliation is achieved, result in the dissolution or annulment of the marriage or in the disruption of the household, and there is any minor child of the spouses or of either of them whose welfare might be affected thereby, the children's court of conciliation shall have jurisdiction over the controversy, and over the parties thereto and all persons having any relation to the controversy, as further provided in this chapter."

It is conceded that plaintiff and defendant were husband and wife and had been living together in California. A disagreement arose and they separated, the plaintiff taking three children with her. The other two, a boy and a girl, both older than the child in this action, who was about eleven at that time, were the children. The defendant father filed a petition for conciliation in the conciliation court. He alleged the above facts a little more in detail; that a reconciliation might be had, set out the facts about the children and prayed that the court take jurisdiction. In his affidavit to subport this petition he set out the cause of separation; that is, that his wife had been seeing other men; that he wanted a divorce; that his wife was likely to interfere with a settlement by removing some of the children from the custody of the court; that the child would be better off under different environment. An order was issued restraining the wife from removing the child from Los Angeles

county and she was cited to appear. A hearing was had before the director of conciliation. The director made an order stating that defendant's idea in coming into court was to have the court persuade the wife to place the eleven-year-old boy in the McKinley Home. The director stated that the mother was receiving state aid, was not working and was giving the child good care. He further stated "It was suggested that the child remain in the home with his loved ones." The final recommendation was that the case go off the docket. This was approved by the judge of the superior court. All these proceedings were introduced at the trial of this action in lower court. We hold the effect of the final order in these proceedings amounted to a finding by the trial court in California that the welfare of this child would best be served by leaving him with his mother. The trial court had jurisdiction of this petition for a writ of habeas corpus.

This action was tried in the lower court on the theory that the questions were the fitness of each parent and the welfare of the child. Inherent in these questions were the circumstances leading up to the separation, the home and care being furnished by defendant and the home and care the plaintiff would be able to furnish. There was testimony of both the plaintiff and defendant as to the alleged misconduct of plaintiff with a man other than her husband and the general situation of both parents as to fitness. Both the parties were before the judge of the trial court. That court found neither party was unfit, but placed the decision on the welfare of the child. In cases involving as intangible a situation as the welfare of a twelve-year-old boy the trial court must of necessity be vested with wide discretion. We are unable to say the trial court abused it here.

Defendant argues the trial court erred in the admission in evidence of the records of the proceedings in the superior court in California reference to which has already been made in this opinion. He argues these proceedings had no bearing on the question of the fitness of either parent or the present welfare of the child. This evidence shed some light on the general situation of the parties and of the fitness of the mother to have custody and were admissible for that purpose.

The judgment of the trial court is affirmed.